S08A1211, S08X1212. HALL v. BRANNAN; and vice versa.

(670 SE2d 87)

THOMPSON, Justice.

A jury convicted Andrew Howard Brannan of the murder of Kyle Dinkheller and sentenced him to death, and this Court unanimously affirmed on direct appeal. *Brannan v. State*, 275 Ga. 70 (561 SE2d 414) (2002). Brannan filed a petition for writ of habeas corpus on

May 2, 2003, which he amended on August 4, 2005. An evidentiary hearing was held on August 21-23, 2006. The habeas court filed a final order on March 17, 2008. The order clearly vacates Brannan's death sentence; however, it is unclear whether it also vacates Brannan's conviction. The warden appeals in Case No. S08A1211, and Brannan cross-appeals in Case No. S08X1212. For the reasons set forth below, we reinstate Brannan's death sentence and, to the extent that it is necessary to do so, we also reinstate his conviction.

*I. Factual Background*

On January 12, 1998, Brannan was stopped for driving his truck at 98 miles per hour by Kyle Dinkheller, a Laurens County Deputy Sheriff. Dinkheller's patrol cruiser was equipped with a video recorder, and Dinkheller was wearing a microphone. The recording shows that Brannan exited his truck and addressed Dinkheller with relative cordiality. However, Brannan became angry with Dinkheller when he ordered Brannan to take his hands out of his pockets. Brannan shouted, "Fuck you, goddamn it, here I am. Shoot my fucking ass." Brannan then began dancing around in the street, yelling, "Here I am, here I am . . . [s]hoot me." When Dinkheller placed a call on his radio for assistance, Brannan yelled, "Who are you calling, motherfucker?" Brannan then charged at Dinkheller repeatedly as Dinkheller ordered him to get back and drew his baton. Brannan yelled, "Fuck you," repeatedly, and he then yelled, "I am a goddamn Vietnam combat veteran." Brannan then began rummaging behind the driver's seat of his truck, ignoring Dinkheller's orders for him to stop. Brannan yelled that he was in fear for his life, and Dinkheller replied that he was in fear for his own life. Brannan took a .30 caliber carbine rifle from his truck, crouched at the door of his truck, and pointed the rifle at Dinkheller. After Dinkheller repeatedly ordered Brannan to put the rifle down, shots were fired by both men. Dinkheller was hit, and he attempted to retreat and take cover behind the patrol cruiser. Brannan pursued Dinkheller, firing repeatedly and reloading. Brannan was shot once in the abdomen. Dinkheller had been shot nine times and had likely lost consciousness when Brannan took careful aim, said, "Die fucker," and fired a final shot. Brannan then fled in his truck. He was discovered hiding in the woods outside his home and was arrested. He gave statements to GBI agents indicating that he regretted what had happened but that he believed Dinkheller had provoked him with an aggressive and disrespectful approach.

*II. Alleged Ineffective Assistance of Counsel*

The warden argues in his appeal that the habeas court erred in granting relief based on a number of Brannan's ineffective assistance of trial counsel claims, and Brannan argues in his cross-appeal that the habeas court erred by not granting relief on additional

grounds of alleged ineffective assistance. To succeed on an ineffective assistance of trial counsel claim, Brannan must show that his trial counsel rendered constitutionally-deficient performance and that actual prejudice of constitutional proportions resulted. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783-784 (1) (325 SE2d 362) (1985). To show sufficient prejudice, Brannan must show that

> there is a reasonable probability (i.e., a probability suffi-cient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different. [Cit.]

*Smith*, 253 Ga. at 783 (1). On appeal, we accept the habeas court's findings of fact unless they are clearly erroneous; however, we apply those facts to the law de novo. *Head v. Carr*, 273 Ga. 613, 616 (4) (544 SE2d 409) (2001). For the reasons set forth below, we conclude as a matter of law that the absence of counsel's deficiencies would not in reasonable probability have changed the outcome in Brannan's case. See *Schofield v. Holsey*, 281 Ga. 809, 812, n. 1 (642 SE2d 56) (2007) (holding that the combined effect of trial counsel's professional deficiencies should be considered); *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993) (holding that an ineffective assistance of counsel claim can be decided based solely on the absence of prejudice of constitutional proportions).

*A. Evidence Presented at Trial*

Before discussing the actions that trial counsel allegedly *failed* to take, we first briefly summarize the evidence trial counsel actually presented.[1]

Counsel presented testimony from Dr. Donald Harris, a psy-chologist who had conducted a court-ordered evaluation of Brannan. Dr. Harris indicated that Brannan had not shown any signs of malingering, that Brannan had an elevated score on a test for paranoia, and that persons found insane at trial are housed in a maximum security area at Central State Hospital.

Counsel presented testimony from Dr. Robert Storms, a psy-chologist who had evaluated Brannan at counsel's request. Dr. Storms testified that Brannan had

---

[1] Throughout our discussion of alleged ineffective assistance of counsel, we focus on the testimony and documentary evidence that was actually presented to the jury by defense counsel without addressing as to each item whether it *should* have been accepted by the trial court as admissible evidence. We find this approach appropriate in the specific context of considering the adequacy of the defense actually presented and the effect that additional evidence may or may not have had on the jury's deliberations if such additional evidence had been presented.

twelve or fifteen years of medical history comprised of maybe four or five hundred documented pages of past psychiatric disorders, specifically post traumatic stress disorder.

Dr. Storms detailed Brannan's military history, which included "set[ting] booby traps and ambushes for the Viet Cong" and the death of one of his commanding officers, which occurred under circumstances for which Brannan felt responsible. Dr. Storms testified that Brannan had a history of manic depression, otherwise known as bipolar disorder, and that Brannan's post-traumatic stress disorder had led to the dissolution of his marriage, to his inability to work "an established routine," to his becoming a recluse, to his living in a remote area in a house with military features, to his being declared 100 percent disabled by the Department of Veterans Affairs, to his having intrusive thoughts of Vietnam, to his having flashbacks to Vietnam wherein he had the experience of reliving events from the war, to his having severe anxiety and chronic guilt, to his feeling in danger for no objective reason, and to his being hospitalized. Dr. Storms concluded that Brannan was not malingering, that he had committed the murder while in a flashback, and that he did not have the mental capacity to distinguish right and wrong during the murder. Dr. Storms also testified that Brannan was likely in a hypomanic state, a state of arousal just below a manic state, at the time of the murder.

Counsel presented testimony from Dr. Avrum Weiss, a psychologist, on the subject of post-traumatic stress disorder. Dr. Weiss testified about Brannan's past exposure to combat and about how persons who experience a flashback "will actually re-live a piece of [their past] traumatic experience." Dr. Weiss testified that he had concluded from his review of the records, from his evaluation of Brannan, from Brannan's statements to the GBI, and from the video recording of the murder that Brannan was in a flashback during the murder. Dr. Weiss also criticized the report of Dr. Gary Carter, the court-appointed psychiatrist who evaluated Brannan, claiming that Dr. Carter had incorrectly focused on Brannan's conduct after the murder and had ignored signs that Brannan had experienced a flashback during the murder.

Pursuant to a joint stipulation, counsel entered Brannan's medical records from the Department of Veterans Affairs and his military records into evidence.

Dr. Gary Carter testified that he did not believe Brannan had experienced a flashback or was insane during the murder. Dr. Carter explained that Brannan's actions were better understood as "taunting" and "rage" and that Brannan had simply relied on his past

training in combat to carry out the murder efficiently. He testified that Brannan's dancing in the street was similar to behavior Brannan had used in the past to diffuse a dangerous encounter with an armed person. He also testified that he did not believe Brannan was in a manic or hypomanic state but, instead, that Brannan's driving at 98 miles per hour was a reasonable means of testing a repair on his truck before the warranty expired and that Brannan's demeanor during the encounter with Dinkheller could be better described as "irritability" and "anger." On cross-examination, trial counsel elicited testimony from Dr. Carter showing that Brannan had a number of diagnoses of bipolar affective disorder, depression, and psychotic behavior, which contradicted Dr. Carter's earlier testimony that Brannan was not subject to manic symptoms and his testimony that Brannan had no prior diagnoses of pyschosis. Counsel also cross-examined Dr. Carter on his testimony that Brannan's memory of the murder had been sound, showing multiple instances where Brannan had made statements indicating a fragmented memory, which is a symptom of a flashback. Counsel also countered Dr. Carter's claim that Brannan did not truly have post-traumatic stress disorder by showing that Dr. Carter's own report made that diagnosis.

In his opening remarks at the beginning of the sentencing phase, after the jury had rejected a not guilty by reason of insanity verdict or a guilty but mentally ill verdict by finding Brannan guilty, counsel stated the following to the jury:

> we certainly respect your decision in this case and we're going to do nothing in this stage of the proceedings to say anything other than that.

Counsel presented testimony from neighbors, a family friend, and family members, ending with testimony from Brannan's mother. The testimony described Brannan as a caring son who had assisted his father in his dying days and who had shown kindness to several widows and a child in the neighborhood. The testimony emphasized the impact that Brannan's execution would have on his mother, who had already lost her firstborn son in an airplane crash, her youngest son to suicide, and her husband to cancer. Counsel also built on the expert mental health testimony from the guilt/innocence phase with lay testimony regarding Brannan's abnormal behaviors, his strange and isolated living conditions, and his odd "nervous laughter." Counsel's closing in the sentencing phase emphasized Brannan's alleged mental illness and the fact that the jury could decline to impose a death sentence based on mental illness despite the fact that

it had rejected the insanity defense and a guilty but mentally ill verdict.

*B. Mental Health Evidence that Allegedly Should Have Been Presented at Trial*

The habeas court faulted trial counsel for failing to present evidence that Brannan had not taken his medications for several weeks prior to the murder. Trial counsel testified in the habeas court that he and co-counsel had discussed Brannan's medications but that Brannan's failure to obtain his medications on one occasion was due to his having an argument with a man in line at the pharmacy that required the police to come and that Brannan had a history of failing to take his medications. Under the circumstances, we find that trial counsel did not perform deficiently by declining to open up the matter of *why* Brannan had not had his medications; instead, counsel reasonably opted simply to note the fact that Brannan had not taken his medications by referring to Brannan's evaluation by Dr. Carter. Furthermore, Brannan was not prejudiced by counsel's failure to call Dr. William Boyer, who had been Brannan's psychiatrist before the murder, to testify regarding the effects of Brannan's lack of medication: as Dr. Boyer's pretrial testimony shows, he believed that the lack of medication would have simply made Brannan depressed. In that same vein, we note that Dr. Carter, the trial court's expert, testified in the habeas proceedings that Brannan's alleged lack of medication would have simply made him more irritable.

The habeas court found fault in counsel's decision not to call Dr. Boyer as a witness on matters other than Brannan's lack of medication. However, counsel testified as follows:

> I was uncomfortable as to what he might testify to on the issues directly relating to insanity, I don't know that he would have supported us on that. I also had the sense that perhaps Dr. Boyer was being a little protective of the VA and himself, and I thought I wouldn't use him. It was sort of evolving thought about whether to use him or not.

In light of counsel's reasonable strategic concerns, we conclude as a matter of law that counsel did not perform deficiently by failing to call Dr. Boyer as a witness. The habeas court further found that counsel rendered ineffective assistance by stating during his opening statement in the guilt/innocence phase that he "believe[d]" that Dr. Boyer would testify but then not calling him as a witness. See *Anderson v. Butler*, 858 F2d 16, 18-19 (1st Cir. 1988) (finding ineffective assistance where trial counsel unnecessarily announced his intention to call a certain witness but then failed to do so).

Pretermitting whether counsel performed deficiently by announcing the likelihood that he would call Dr. Boyer as a witness while his decision on whether to do so was, in his own words, "evolving," we conclude as a matter of law that trial counsel's actions did not prejudice Brannan's defense to a significant degree, particularly in light of the fact that Dr. Boyer's evaluation and treatment of Brannan was discussed by other expert witnesses.

The habeas court found that trial counsel rendered ineffective assistance by not emphasizing Brannan's diagnoses of bipolar disorder. This finding ignores, first of all, the fact that counsel did present testimony showing Brannan's history of manic and hypomanic symptoms, depression, and bipolar disorder. Furthermore, counsel reasonably chose to focus their efforts largely on showing post-traumatic stress disorder, which, unlike a showing of bipolar disorder, could potentially support both a not guilty by reason of insanity verdict and a guilty but mentally ill verdict and which was more consistently supported by Brannan's medical records. The record is very clear that counsel prepared thoroughly to present their mental health evidence by interviewing Brannan and his mother repeatedly to learn about his personal history, obtaining all available medical records, obtaining jail records, obtaining school records, researching mental health information, and presenting the expert testimony described above and that their chosen mental health strategy was reasonable.

Brannan argues that counsel failed to present sufficient evidence to explain why he developed post-traumatic stress disorder. Brannan argues that counsel failed to adequately research his combat experience; however, in light of the testimony and documentary evidence presented at trial, we conclude as a matter of law that Brannan's defense was not prejudiced by counsel's failure to present evidence like the affidavit testimony Brannan has presented in the habeas court from other persons who served in Vietnam. Similarly, we conclude as a matter of law that counsel did not perform deficiently and that Brannan's defense was not prejudiced regarding evidence of Brannan's personal tragedies and his medical history as those things pertain to post-traumatic stress disorder, particularly in light of the evidence and argument counsel presented that Brannan had a long history of treatment for post-traumatic stress disorder that was related to his war experiences.

The habeas court found that counsel's actions in the guilt/innocence phase forced the jury to reach a guilty verdict once they chose not to select a not guilty by reason of insanity verdict. Our review of counsel's arguments at trial do not support this finding. Furthermore, the fact that a verdict of not guilty by reason of insanity *would* have barred a death sentence whereas a verdict of

guilty but mentally ill would not confirms that counsel acted reasonably in placing a special focus on insanity while still not entirely abandoning the possibility of a verdict of guilty but mentally ill. See *Lewis v. State*, 279 Ga. 756, 764 (12) (620 SE2d 778) (2005) (holding that "the statute that provides for a verdict of guilty but mentally ill does not preclude a death sentence as the result of such a verdict"). Thus, we conclude as a matter of law that counsel did not perform deficiently and that Brannan's defense was not prejudiced by counsel's conduct regarding the three possible verdicts in the guilt/innocence phase.

The habeas court found that counsel rendered ineffective assistance by failing to elicit testimony from Dr. Carter regarding whether Brannan was guilty but mentally ill. Our review of Dr. Carter's testimony reveals that trial counsel ably cross-examined Dr. Carter regarding his doubts about Brannan's alleged mental illness, including by confronting Dr. Carter with specific items from Brannan's medical records showing diagnoses of various forms of mental illness such as post-traumatic stress disorder and bipolar disorder and even by pointing out to Dr. Carter that he himself had made a diagnosis of post-traumatic stress disorder. In light of the testimony counsel actually elicited, we conclude as a matter of law that counsel did not perform deficiently regarding Dr. Carter's testimony and that Brannan's defense was not prejudiced by counsel's handling of his testimony.

The habeas court found that counsel rendered ineffective assistance by failing to rebut the State's argument that Brannan was malingering. However, our review of the trial record reveals that counsel presented testimony from Dr. Harris and Dr. Storms specifically stating that they had evaluated Brannan for malingering and had concluded that he had not done so. Accordingly, we conclude as a matter of law that counsel did not perform deficiently regarding malingering and that Brannan's defense was not prejudiced by counsel's handling of the subject.

The habeas court found that trial counsel rendered ineffective assistance by failing to present additional testimony about Brannan's idiosyncratic laugh that would appear when he was anxious. Our review of the record reveals that the jury was informed in multiple ways during both the guilt/innocence phase and the sentencing phase regarding Brannan's laugh. Accordingly, we conclude as a matter of law that counsel did not perform deficiently by failing to present additional evidence regarding Brannan's laugh and that Brannan's defense was not prejudiced by counsel's failure to do so.

The habeas court found that counsel failed to present mental health evidence in the sentencing phase. However, as we noted above, trial counsel presented lay testimony that supported the

expert testimony presented in the guilt/innocence phase along with other testimony about Brannan's good character. Counsel also reminded the jury that the evidence from the guilt/innocence phase carried over to the sentencing phase. See *Berryhill v. State*, 249 Ga. 442, 450-451 (11) (291 SE2d 685) (1982) (noting that the jury properly reconsiders all evidence from the guilt/innocence phase in the sentencing phase). Accordingly, we conclude as a matter of law that trial counsel did not perform deficiently and that Brannan's defense did not suffer any prejudice from counsel's actions.

*C. Other Instances of Alleged Ineffective Assistance of Counsel*

The habeas court found that counsel rendered ineffective assistance by stipulating to the admissibility of the portion of the video recording that depicts the murder, Brannan's fleeing, and sounds of Dinkheller's dying breaths. Although the recording is deeply disturbing, it was admissible evidence of Brannan's actions and of the death of the victim. See *Cohen v. State*, 275 Ga. 528, 530-531 (3) (570 SE2d 301) (2002) (holding that "the gruesome or inflammatory aspect of the pictorial evidence," which included a video recording, "stemmed entirely from [the defendant's] own acts" and was admissible). We conclude as a matter of law that counsel did not perform deficiently by not raising a meritless objection to the portion of the video recording admitted at trial and that Brannan's defense did not suffer prejudice by their failure to do so. See *Hampton v. State*, 282 Ga. 490, 492 (2) (a) (651 SE2d 698) (2007); *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001).

Brannan argues in his cross-appeal that trial counsel rendered ineffective assistance by successfully moving to suppress a portion of his statement to the GBI that contained statements of remorse. However, our review of the statements reveals that the unsuppressed portion also contained statements of remorse and that the suppressed portion contained statements partially fixing blame on the sheriff's office and the victim for not following better procedures. Under these circumstances, we conclude as a matter of law that trial counsel did not perform deficiently by having a portion of the interview suppressed and that Brannan's defense was not prejudiced by counsel's doing so.

Brannan also argues in his cross-appeal that counsel rendered ineffective assistance by failing to obtain testimony, like testimony he presented in the habeas court, showing that the victim fired the first shot and that the victim failed to comply with proper police procedures. Counsel testified in the habeas court, however, that he had believed all along that the victim had fired first but that he saw no need for testimony on that subject because it was clear that the victim, being confronted with an armed and belligerent person who

refused to put down his assault rifle, *should* have fired first. He also testified that, in his judgment, the question of who shot first would not affect Brannan's insanity defense. Dr. Storms, the defendant's most-important expert witness, testified that he believed Brannan had entered into a flashback while he was rummaging in his truck looking for his rifle, long before any shots were fired. Furthermore, testimony from Dr. Carter, the trial court's expert, and questions to Dr. Carter by the prosecutor both seemed to assume that the victim had shot first. Under these circumstances, we conclude as a matter of law that counsel did not perform deficiently and that Brannan's defense was not prejudiced by counsel's failure to seek expert testimony regarding who shot first. Likewise, because the jury very likely would have been offended by an argument that the victim was somehow responsible for his own death because he failed to confront Brannan even more aggressively than he did, we conclude as a matter of law that counsel did not perform deficiently and that Brannan's defense was not prejudiced by counsel's failure to introduce evidence about proper police procedures like the evidence Brannan presented in the habeas court.

*D. Collective Effect of Trial Counsel's Deficiencies*

Considering the collective prejudicial effect of all of counsel's deficiencies that we have either found or assumed in the discussion above, we conclude as a matter of law that the absence of those deficiencies would not in reasonable probability have changed the outcome of either phase of Brannan's trial. See *Holsey*, 281 Ga. at 812, n. 1 (holding that the combined effect of trial counsel's professional deficiencies should be considered).

*III. Execution of Mentally Ill Persons*

Brannan argues that his execution would be unconstitutional because it is unconstitutional to execute any persons who are severely mentally ill. This claim is barred by procedural default because it was not raised on direct appeal, and, therefore, it can be considered on habeas corpus only if Brannan can satisfy the cause and prejudice test to overcome that bar. *Head v. Ferrell*, 274 Ga. 399, 401-402 (III) (554 SE2d 155) (2001); OCGA § 9-14-48 (d). The jury in Brannan's case rejected his claim that he committed the murder as a result of severe mental illness by finding him guilty rather than guilty but mentally ill. See OCGA § 17-7-131 (b) (1) and (c) (2). As the discussion above demonstrates, Brannan's trial counsel did not render ineffective assistance in their presentation of mental health evidence. Because Brannan has failed to show that his trial counsel rendered ineffective assistance in failing to prove that he was mentally ill at trial, he cannot show cause for his inability to raise a claim based on such a verdict on direct appeal. See *Ferrell*, 274 Ga. at 402 (III) (noting that ineffective assistance of counsel can be used to

satisfy the cause portion of the cause and prejudice test where a claim is procedurally defaulted). Furthermore, as an independent, alternative holding, we conclude that, unlike the case of juvenile offenders and mentally retarded persons, there is no consensus discernible in the nation or in Georgia sufficient to show that evolving standards of decency require a constitutional ban, under either the Constitution of the United States or under the Georgia Constitution, on executing all[2] persons with mental illnesses, particularly persons who have shown only the sort of mental health evidence that Brannan has shown. Compare *Roper v. Simmons*, 543 U. S. 551 (125 SC 1183, 161 LE2d 1) (2005) (declaring the execution of juvenile offenders to violate the Constitution of the United States); *Atkins v. Virginia*, 536 U. S. 304 (122 SC 2242, 153 LE2d 335) (2002) (declaring the execution of mentally retarded persons to violate the Constitution of the United States); *Fleming v. Zant*, 259 Ga. 687 (386 SE2d 339) (1989) (declaring the execution of mentally retarded persons to violate the Georgia Constitution). Having found, as an alternative holding, that Brannan's underlying claim is meritless, we conclude that he cannot show prejudice from his trial counsel's failure to raise it on direct appeal. Because Brannan has failed to show cause for his failure to prove at trial and complain on direct appeal that he was guilty but mentally ill and because he has failed to show prejudice stemming from that failure, we hold that his claim that his execution would be unconstitutional based on his alleged severe mental illness is barred by procedural default.

*IV. Allegedly-Improper Arguments by the Prosecutor*

Brannan argues that the prosecutor made several improper arguments at trial. This claim is barred by procedural default because it was not raised at trial and on direct appeal, and it can be considered on habeas corpus only if Brannan can satisfy the cause and prejudice test. *Ferrell*, 274 Ga. at 401-402 (III); OCGA § 9-14-48 (d). Brannan correctly argues that a showing of ineffective assistance of counsel can satisfy the cause portion of the cause and prejudice test. See *Ferrell*, 274 Ga. at 402 (III). However, none of the arguments Brannan complains about were improper and, therefore, trial counsel did not render ineffective assistance by failing to make objections to them. *Hampton*, 282 Ga. at 492 (2) (a); *Fults*, 274 Ga. at 87 (7). In arguing that Brannan had systematically sought out a designation as disabled from the Department of Veterans Affairs, the

---

[2] We address here only whether it is unconstitutional to execute *all* persons with mental illnesses. We acknowledge, of course, that it is both unconstitutional and unlawful under Georgia statutory law to execute persons who are insane at the time of their executions. *Ford v. Wainwright*, 477 U. S. 399, 409-410 (II) (B) (106 SC 2595, 91 LE2d 335) (1986). See also OCGA § 17-10-60 et seq.

prosecutor merely suggested a reasonable deduction from the evidence. See *Gissendaner v. State*, 272 Ga. 704, 712 (9) (532 SE2d 677) (2000) ("Counsel certainly are permitted to argue reasonable inferences from the evidence presented at trial"). Similarly, the prosecutor made a reasonable deduction from the evidence in suggesting that Brannan would pose a future danger in prison based on the evidence presented at the sentencing phase showing that while in jail Brannan had surreptitiously obtained razor blades, had attached razor blades to the ends of pieces of cardboard, had concealed pieces of metal that could potentially be used to open handcuffs, and had charged at a guard with his fists clenched as if he were going to strike the guard. Compare *Henry v. State*, 278 Ga. 617, 618-620 (1) (604 SE2d 826) (2004). Finally, the prosecutor did not argue improperly by stating that a death sentence for Brannan would deter similar crimes by others. *Pace v. State*, 271 Ga. 829, 844 (31) (f) (524 SE2d 490) (1999) ("It was not improper for the prosecutor to argue that a death sentence would 'send a message' and deter other killers."). Because none of these arguments were improper, Brannan cannot show cause, through a claim that trial counsel rendered ineffective assistance by not objecting at trial, or prejudice sufficient to overcome the bar to this defaulted claim.

*Judgment affirmed in Case No. S08X1212. Judgment reversed in Case No. S08A1211. All the Justices concur.*

DECIDED NOVEMBER 3, 2008 —
RECONSIDERATION DENIED DECEMBER 15, 2008.

*Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Susan V. Boleyn, Patricia B. Attaway Burton, Senior Assistant Attorneys General*, for appellant.

*Thomas H. Dunn, Kimberly L. Sharkey, King & Spalding, William E. Hoffmann, Jr., Thomas C. Lundin, Jr., Christopher C. Bly, Hoyt L. Dennard, Jr.*, for appellee.