71175. JOHNSON v. SOUTHEASTERN FIDELITY INSURANCE
COMPANY et al.
(343 SE2d 709)

POPE, Judge.

Appellant Homer LeRoy Johnson brought this action seeking recovery of personal injury protection (PIP) benefits under separate motor vehicle liability insurance policies issued by appellees Southeastern Fidelity Insurance Company and Protective Insurance Company. Appellant's complaint averred that on May 28, 1980 he suffered an accidental bodily injury arising out of the operation, maintenance or use of a motor vehicle owned by Cedartown-Atlanta Freight Lines, Inc., and incurred medical expenses and lost income or earnings in excess of $67,000. Appellant sought recovery of $5,000 basic PIP from Protective which had issued a policy to Cedartown-Atlanta, covering the tractor-trailer vehicle in which he was injured. He further sought recovery of $45,000 optional PIP from Southeastern, which had issued a personal policy to him. The complaint also sought recovery of penalty, attorney fees, and punitive damages against both appellees. Answers were filed by both appellees, each admitting the issuance of the insurance policies, but denying that appellant's injury was compensable under the policies and asserting various other defenses. Following discovery, all parties moved for summary judgment. This appeal

arises from the trial court's grant of appellees' motions and the denial of appellant's motion.

The injury for which appellant seeks recompense from appellees is a heart attack he suffered allegedly as the result of pushing heavy freight while in the trailer attached to his employer's truck in the course of unloading same. Although this incident occurred on May 28, 1980, written notice of appellant's claim as to Protective was by virtue of a letter from appellant's employer dated October 23, 1981; as to Southeastern, notice of appellant's claim was given by letter from his attorney dated November 27, 1981. Appellant has filed no claim for workers' compensation benefits.[1] In their motions for summary judgment both Protective and Southeastern argued that appellant's injury was not of the type covered by the Georgia Motor Vehicle Accident Reparations Act, the no-fault law. Also, both appellees argued that appellant had failed to timely comply with the notice of accident provisions of the respective policies. In addition to these arguments, Southeastern contends that its policy contained an endorsement which excluded coverage of commercial vehicles and also that the policy did not contain optional PIP coverage. Appellant's motion sought summary judgment only as to optional PIP benefits under the policy issued to him by Southeastern pursuant to the holdings in *Jones v. State Farm &c. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623) (1980), and *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983).

1. We first turn to the issue of notice. The policies of both appellees provide as a condition precedent to coverage that written notice of an accident by or on behalf of an eligible insured be made "as soon as practicable." Appellant acknowledges the relatively long delay in providing such notice to appellees here. However, he seeks to justify the delay based upon his lack of knowledge that the policies in question might afford coverage for his heart attack.

(a) As to Protective, appellant testified that after his heart attack he was told by his employer that it would take care of all insurance matters; he was not informed of the name of the insurance company providing coverage on the vehicle in which he suffered his heart attack. Further, he was often told by the company that it had no insurance on its vehicles. The company also told appellant that he was ineligible for workers' compensation benefits as the result of his heart attack. He avers that once he found out he was not going to receive benefits of any kind, he contacted an attorney who then filed a claim on his behalf with Protective.

"As is true generally with regard to issues relating to reasonable-

---

[1] Appellant's receipt of workers' compensation benefits would not bar recovery of no-fault benefits from his employer or the recovery of no-fault benefits under a personal policy. See *Brown v. Boston Old Colony Ins. Co.*, 247 Ga. 287 (275 SE2d 651) (1981).

ness and sufficiency of compliance with stated conditions, questions of the adequacy of the notice and the merit of [appellant's] claim of justification are ones of fact which must be resolved by a jury as they are not susceptible to being summarily adjudicated as a matter of law. [Cits.] . . . It is our opinion that [these] issue[s] must be decided contrary to [Protective's] position on the basis of *Ga. Mut. Ins. Co. v. Criterion Ins. Co.*, 131 Ga. App. 339 (206 SE2d 88) (1974). In *Ga. Mut.* this court affirmed the denial of summary judgment to the insurer — who had raised the identical contention advanced here — where the record showed that the delay in giving notice for approximately four months was because the insureds '. . . did not know their policy might afford coverage for the collision.' " *State Farm &c. Ins. Co. v. Sloan*, 150 Ga. App. 464, 466, 468 (258 SE2d 146) (1979). Cf. *First of Ga. Underwriters Co. v. Beck*, 170 Ga. App. 68 (4) (316 SE2d 519) (1984). Compare *Bates v. Holyoke Mut. Ins. Co.*, 171 Ga. App. 164 (318 SE2d 777) (1984), aff'd 253 Ga. 697 (324 SE2d 474) (1985), and *Southeastern Stages v. Gen. Fire &c. Co.*, 151 Ga. App. 487 (1A) (260 SE2d 399) (1979), wherein the insureds offered *no* excuse for their lengthy delay in filing a claim. See also *Intl. Indem. Co. v. Smith*, 178 Ga. App. 4 (1) (342 SE2d 4) (1986), wherein this court held that ignorance of the terms of an insurance policy due to illiteracy, in and of itself, provided no excuse for an insured's failure to comply with the policy's notice provisions; and *Golder v. United Svcs. Auto. Assn.*, 177 Ga. App. 194 (1) (338 SE2d 771) (1985), wherein this court held that an insured's hope and impression that another insurance company would be liable for a claim against him also provided no basis for his failure to comply with the notice provisions of the policy.

Protective also relies heavily on the holding in *Flamm v. Doe*, 167 Ga. App. 587 (307 SE2d 105) (1983), wherein an employee's failure to comply with the 30-day notice provision of his employer's uninsured motorist coverage resulted in summary judgment in favor of the insurer. This court affirmed the summary adjudication on the grounds that the employee seeking coverage under the policy was under a duty to inform himself of his responsibilities thereunder and also that the benefits sought *did not involve compulsory insurance coverage.* Since the coverage sought by appellant from Protective in the case at bar is the minimum no-fault coverage mandated by statute, OCGA § 33-34-4 (a), the circumstances here are distinguishable from those which form the basis of the holding in *Flamm v. Doe,* supra. Thus, we cannot say as a matter of law that notice was not given in the case at bar "as soon as practicable."

(b) As to Southeastern, appellant testified that shortly after he got out of the hospital following his heart attack he spoke with the insurance agent through whom he had obtained the Southeastern pol-

icy. Although he did not make a claim at that time, he told the agent about his "trouble and everything . . . what all happened." In light of the cases cited above in subdivision (a), we cannot say as a matter of law that appellant's 18-month delay in providing written notice of his claim to Southeastern was unjustified. See *Kitt v. Shield Ins. Co.*, 240 Ga. 619 (241 SE2d 824) (1978).

2. Appellees also both contend that appellant's injury, i.e., his heart attack, is not compensable under the no-fault law. "Georgia's Motor Vehicle Accident Reparations Act requires and restricts payment of no-fault insurance benefits in and to those instances specified in OCGA § 33-34-7 as the terms therein used are defined in the no-fault act, OCGA § 33-34-2." *Kelley v. Integon Indem. Corp.*, 253 Ga. 269, 274 (320 SE2d 526) (1984). In order to recover no-fault benefits, appellant must show that he suffered an "accidental bodily injury," which is defined by OCGA § 33-34-2 (1) as "bodily injury, sickness, or disease . . . arising out of the operation, maintenance, or use of a motor vehicle which is accidental to the person claiming basic no-fault benefits. . . . Bodily injury is accidental as to the claimant unless sustained intentionally by the person injured or caused intentionally by the claimant." A "motor vehicle" includes "a trailer drawn by or attached to such a vehicle." OCGA § 33-34-2 (6). "Operation, maintenance, or use of a motor vehicle" includes "conduct in the course of loading or unloading the vehicle [if] the conduct occurs while occupying it." OCGA § 33-34-2 (9).

As noted above, the injury for which appellant seeks recovery of no-fault benefits is a heart attack he suffered allegedly as the result of his pushing heavy freight in the trailer of his employer's truck in the course of unloading it. There is expert witness testimony of record which both substantiates and refutes appellant's claim of where and when his heart attack occurred and its cause. In light of the definitions cited above and construing the facts most strongly in favor of appellant as the non-moving party, we cannot say as a matter of law that appellant's heart attack is not compensable under the no-fault law. Accord *Franklin v. Southern Guaranty Ins. Co.*, 160 Ga. App. 279 (287 SE2d 274) (1981). It follows, also, that the trial court misplaced its reliance on *Jones v. Continental Ins. Co.*, 169 Ga. App. 153 (312 SE2d 173) (1983), in concluding that the facts in the case at bar did not set forth an "insured event" under the no-fault law. In *Jones* the evidence clearly showed that the claimant was not "occupying" her vehicle at the time she was injured while unloading it.

3. Appellee Southeastern also attempts to bar appellant's no-fault claim on the basis of a "Wholesale and Retail Delivery Endorsement" attached as a rider to appellant's policy because of his employment as a truck driver. The endorsement provides as pertinent here: "In consideration of the premium charged, insurance is not afforded

by this policy: . . . (b) for bodily injury sustained while in, upon, entering or alighting from the portion normally designed for cargo of any automobile, regardless of use. The provisions of this endorsement supercede and exclude from the policy any contrary provision(s)." It is clear from the plain language of this endorsement that it is far broader in its attempted exclusion of certain bodily injuries than the coverage mandated by the no-fault law. See OCGA § 33-34-2 (6), (8) and (9). The no-fault law requires that "[a]ll policies of motor vehicle liability insurance issued in this state *must* be in accordance with the requirements of this chapter; and no insurer shall issue a policy of motor vehicle liability insurance in this state that does not contain at least the minimum coverages required under this chapter." OCGA § 33-34-3 (a) (1). Since the subject endorsement purports to exclude certain bodily injuries otherwise required to be covered under the no-fault law, it is in conflict therewith and will not be enforced. See *Thames v. Piedmont Life Ins. Co.*, 128 Ga. App. 630 (1) (197 SE2d 412) (1973).

4. Appellee Southeastern further argues that its application for insurance in this case was in substantial compliance with OCGA § 33-34-5 (b) in effect in 1980 when the application was completed. Southeastern does not assert that OCGA § 33-34-5 (c) in effect at that time is applicable to this case. As best as we can determine due to the poor record quality of the reproduction of this application,[2] the pertinent provision is contained in one of six boxes on the back or second page of the application and provides in rather small print: "I understand that the State requires additional optional coverages must be offered me under my motor vehicle policy. These coverages have been offered me and I hereby reject the following coverage(s). [Please check the coverage(s) you wish to reject.]" This language is followed by four options, each preceded by a small square which has been checked. The options are "Additional Personal Injury Protection," "Loss of Use," "No Deductible Comprehensive," and "No Deductible Collision." The form then provides a space for the applicant's signature.

"In order for a document to be in substantial compliance with OCGA § 33-34-5 (b) in its pre-November 1, 1982 version, the form on its face should show the prospective insured, as a reasonable man or woman, the offered coverages and the action needed to accept or reject with such clarity so as not to require speculation as to whether there was a knowing election. In other words, does the form show that the applicant, as an ordinary reasonable man or woman, understood what was being offered and what choices he or she was making?" *As-*

---

[2] We have utilized appellant's 1981 application in reaching our conclusion here as it appears to be identical to the 1980 application and is cited in the record to us by Southeastern in its brief.

*sociated Indem. Corp. v. Sermons*, 175 Ga. App. 513, 516 (333 SE2d 902) (1985). Applying this standard to the application here, we find it deficient and not in substantial compliance with the statute. See, e.g., the rejected forms set forth in *Associated Indem. Corp. v. Sermons*, supra at 518; *Douglas v. Jefferson-Pilot Fire &c. Co.*, 175 Ga. App. 457, 459 (333 SE2d 634) (1985); *Atlanta Cas. Co. v. Flewellen*, 164 Ga. App. 885, 893 (300 SE2d 166) (1982), rev'd, *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, supra. Compare *Patterson v. American Motorists Ins. Co.*, 176 Ga. App. 238 (335 SE2d 721) (1985), and cits. It follows that Southeastern's additional argument that appellant's heart attack occurred prior to his obtaining optional PIP coverage is entirely without merit. See *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, supra.

5. Finally, Southeastern argues that appellant is not entitled to any bad faith penalty, attorney fees or punitive damages under OCGA § 33-34-6 (b) and (c) as a matter of law. "Ordinarily, the question of good or bad faith is reserved for the jury, but where there is no evidence of a frivolous or unfounded reason to pay, or if the issue of liability is a close one, the court should disallow imposition of bad faith penalties. [Cit.]" *Govt. Employees Ins. Co. v. Presley*, 174 Ga. App. 562, 566 (330 SE2d 779) (1985). Applying this rule to the record here, we find no basis for the imposition of bad faith penalties and therefore affirm the trial court's grant of summary judgment in this regard. See *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga. App. 155 (1) (308 SE2d 382) (1983); *Ga. Farm Bur. Mut. Ins. Co. v. Matthews*, 149 Ga. App. 350 (2) (254 SE2d 413) (1979).

6. In light of our holding in Division 1, supra, that the issues in regard to notice are not susceptible to summary adjudication in this case, the trial court properly denied appellant's motion for partial summary judgment against Southeastern. See *First of Ga. Underwriters Co. v. Beck*, supra at (4).

*Judgment affirmed in part; reversed in part. Banke, C. J., McMurray, P. J., Carley and Benham, JJ., concur. Deen, P. J., Birdsong, P. J., Sognier and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting in part.

I would affirm the grant of summary judgment to Protective, the employer's motor vehicle insurer, on the ground that claimant failed to give timely notice to the insurer. This is a different basis than the trial court's reason, but the result is the same. *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 539 (307 SE2d 914) (1983).

It is undisputed that the first notice Protective had, written or otherwise, of the occurrence or of the claim, was the letter from claimant Johnson's attorney nearly one-and-a-half years (17 months) after the heart attack. This conclusively exceeds the requirement that

notice be given "as soon as practicable," since his wife reported it to his insurance agent even while he was in the hospital and he went to see his own insurance agent when he got out. So he was not unable to give notice. The claimant contends that there is at least a question of fact regarding whether notice was given "as soon as practicable" because his employer knew all about the occurrence and told him that all insurance matters would be taken care of. He was never told what insurer the employer had but had often been told that the employer had no insurance on the vehicles. Then when Johnson found out he would receive no benefits, he contacted an attorney whose investigation led to the claim being made against the employer's insurer.

Thus Johnson places the blame for the delay on his employer. But the insurer has no control whatsoever on what its insured tells the latter's employees with respect to coverage. The employer is not an agent of the insurer in this regard. The contract provisions govern, and as has been recognized, proper notice was a condition precedent to recovery. *Bates v. Holyoke Mut. Ins. Co.*, 171 Ga. App. 164, 165 (318 SE2d 777) (1984), aff'd 253 Ga. 697 (324 SE2d 474) (1985). The law acknowledges that there is "a compelling need on the part of the insurer to receive timely notice of the events giving rise to a claim." *Flamm v. Doe*, 167 Ga. App. 587, 588 (307 SE2d 105) (1983). Reliance on a third party's statements about coverage should not be a legal factor to elasticize the "as soon as practicable" prerequisite until it elongates the period for notice so that the purpose of requiring timely notice is frustrated.

This is one of those situations where the issue of satisfactory compliance, normally one for the jury, is resolvable as a matter of law. See *Bates v. Holyoke Mut. Ins. Co.*, 253 Ga. 697, supra; *Golder v. U. S. Auto. Assn.*, 177 Ga. App. 194 (1) (338 SE2d 771) (1985). Here the claimant simply relied upon the say-so and action of a third party, rather than pursuing his claim. "The insured seeking to avail himself of the coverage afforded by the policy is under a duty to acquaint himself with his responsibilities thereunder." *Flamm v. Doe*, supra at 588. Since it is incumbent on the insurer to investigate the circumstances giving rise to the claim, "which it may not be able to accomplish in the absence of timely notice," *Flamm*, supra at 588, and the one who decided to make the claim has control over whether he wishes to pursue it and what he relies on in making that determination, I would not find that a jury question remains, based on the excuse for delay being reliance on the employer.

Whether this would give rise to a claim or claims against the employer arising out of the contractual relationship with the employee, is not a question to be addressed here. Before us is whether the claimant gave notice as soon as practicable to the risk-bearer.

I do believe there is a question of fact with respect to the notice

given Johnson's own insurer, since he told the insurer's agent and was not advised to proceed.

In all other respects, I agree with my brethren. I am authorized to state that Presiding Judge Deen, Presiding Judge Birdsong and Judge Sognier join in this dissent.

DECIDED MARCH 10, 1986 —
REHEARINGS DENIED MARCH 27, 1986 —

*Larry D. Ruskaup, James M. Aaron, Jr.*, for appellant.
*Richard B. Eason, Jr., W. Meade Burns, Jr., Roger Mills*, for appellees.