### 77151. SOUTHERN GUARANTY INSURANCE COMPANY OF GEORGIA v. GODDARD et al.
(378 SE2d 130)

BIRDSONG, Judge.

Southern Guaranty Insurance Company brings this appeal from the grant of summary judgment to Brenda and Raymond Goddard, and the denial of their motion for summary judgment. On September 13, 1985, Brenda Goddard made an initial application for automobile insurance with appellant. She spoke with an employee who typed in her answers to questions on the application form. She stated that she did not decide what coverages she would get. She does not know what "PIP" means, and does not recall whether the employee discussed "no-fault" with her at that time. Ms. Goddard claims that the employee did not "explain any coverage at all. . . ." She identified a signature on the back of the application as hers. When asked if she had

read and signed each of the signature lines on the back of the application she replied: "I can't say that I just went over it, you know, thoroughly because the X's were there and I signed them." Ms. Goddard stated that she did not enter the check marks on the application and they were there before she signed. The clerk just told her to "sign here by the X." She identified the signature appearing by "X" rejecting all coverages not accepted in the coverage section on the front page. However, she said she did not read this portion of the application. "I don't think I understood that or, you know, the X's were there and she said to sign here and that's where the X's were and that's exactly what I did . . . I was doing it in faith, good faith, you know."

Ms. Goddard was involved in an automobile collision on November 26, 1985. As a result of that incident she suffered medical injury and lost wages in excess of $5,000. Southern Guaranty paid her $5,000 in basic PIP benefits. Ms. Goddard's attorney contacted Southern Guaranty and advised them of his client's election to have optional PIP coverage in the amount of $50,000. Southern Guaranty refused to honor the request and this action followed. Both parties moved for summary judgment. The trial court granted appellees' motion and denied appellant's motion, and this appeal followed. *Held*:

1. Appellees have filed a motion to dismiss the appeal, arguing that the notice was not timely filed. The judgment of the trial court is dated December 8, 1987, but was not filed until December 10, 1987. A notice of appeal is required to be filed "within 30 days after *entry* [December 10] of the appealable decision or judgment complained of. . . ." (Emphasis supplied.) OCGA § 5-6-38 (a). In computing time for filing a notice, we disregard the date of filing and count the last day. OCGA § 9-11-6 (a). Since the judgment was filed on December 10, 21 days elapsed in December and the 30th day was January 9, 1988, a Saturday. By statute, when the last day falls on a Saturday, the next business day, Monday, January 11, 1988, is the final day for filing. Id. The notice of appeal was timely filed on January 11 and the motion to dismiss is denied.

2. Both parties moved for summary judgment, in essence agreeing that the action was ripe for decision and no issue of material fact existed as a matter of law. *Westberry v. State Farm &c. Ins. Co.*, 179 Ga. App. 700 (3) (347 SE2d 688); *Management Search v. Avon Prods.*, 166 Ga. App. 262 (1) (304 SE2d 426). Appellees prayed for damages in the amount of $9,034.14 plus $190.40 per week for as long as Ms. Goddard remained disabled, and for the full "statutory penalty," attorney fees and punitive damages. The record contains no evidence conclusively establishing a specific amount of damages, lost wages, or attorney fees. The trial court's summary judgment awarded no specific amount of damages, nor did it restrict its judgment to lia-

bility alone, or reserve for trial the issue of damages and attorney fees. On appeal, neither party addresses this question. This court will not undertake to resolve what neither party desires to place in issue.

3. The principal issue at trial and on appeal is the sufficiency of the appellant's application to comply with the provisions of OCGA § 33-34-5 (b), as amended. The statute provides: "Each initial application for a new policy of motor vehicle liability insurance sold in this state after November 1, 1982, shall contain a statement in *boldface type* signed by the applicant *indicating that the optional coverages* listed in subsection (a) of this Code section [Optional PIP—up to $50,000 per person] *have been explained to the applicant.*" (Emphasis supplied.) At issue is whether the application possessed, in *boldface type*, language signifying "the optional coverages . . . have been *explained* to the applicant. . . ." (Emphasis supplied.) Appellees argue that there was noncompliance in that there was no boldface type, and although there was an offer of optional PIP, there was no explanation of such coverage. Appellee's deposition testimony supported her contention that the optional coverages were not explained to her. Appellant has submitted no evidence that optional coverages were explained except testimony that the application bearing appellee's signature followed the statement: "I have been *offered* all Optional Coverages as required by the Georgia and Florida No-Fault Laws, and reject all coverages not indicated as accepted by 'X' in Coverage Section on Front of this application." On the front side of the application are blocks within blocks on the lower half of the right half of the page, listing 29 different types of coverages for each of three different cars, making a total of 87 boxes from which selections were to be entered. All coverages are "abbreviated" and none is "explained." For example, the first large block of coverage offered is: "A BI 10/20,000 25/50,000 100/200,000." The next block is "PIP Basic (5,000 GA) (10,000 FL)." The third block: "B PD 10,000 25,000 50,000 100,000." The next block: "C MP C-1 AP 1,000 Med, (Chk. B for AP), 2,000 Med. (Chk. D for AP), 5,000 Med. (Chk E for AP)." The next coverage offered is: "C-2 10,000 PIP (GA) 25,000 PIP (GA & FL) 50,000 PIP (GA & FL)." None of the blocks for this last section is checked.

This appeal presents the same general question faced in *St. Paul Fire &c. Ins. Co. v. Nixon*, 252 Ga. 469 (314 SE2d 215), that is, whether the application "is in substantial compliance with the requirements of OCGA § 33-34-5 (b). . . ." Id. at 469. The clearly expressed intent of the legislature as to new policies of motor vehicle insurance, sold after November 1, 1982, is: (1) the initial application "shall contain a statement in boldface type signed by the applicant," (2) "indicating that the optional coverages . . . have been explained to the applicant." OCGA § 33-34-5 (b). The application in the instant appeal was a first-time application by Ms. Goddard and was made on

September 13, 1985. The application does not contain any "boldface type" listing the optional PIP coverages, either on the front page where all coverages are listed, or on the reverse side where the signature line is located. Secondly, the application does not contain any wording "indicating that the optional coverages . . . have been explained to the applicant." OCGA § 33-34-5 (b). To the contrary, from the exhibit which apparently is a copy of the application, the reverse page of this exhibit does not show any signatures and inquiry of the clerk of the trial court reveals that the retained copy also shows no signatures. Of course, we are aware of the holding of *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 713 (300 SE2d 673) and *Tolison v. Ga. Farm Bureau &c. Ins. Co.*, 253 Ga. 97, 100 (317 SE2d 185), that " '(t)he purpose of the statute [OCGA § 33-34-5] is to resolve conflicts which arise when an insured contends that he was not informed of his statutory right to optional benefits [as in the instant case]. When this claim is made, the resolution of the issue will be to look to the policy to determine if there was reduction or rejection of those benefits in conformance with the statutory scheme.' " 253 Ga. at 100. The copy of the application here reveals no signatures, but when Ms. Goddard's deposition is consulted, she admits that she did sign the application and she identified her signature after the block checked which indicated she rejected all coverages not accepted on the opposite side of the application. Thus, although the clerk of the trial court does not have the original application and the retained copy as well as the copy in the record does not show any signatures, it is obvious from Ms. Goddard's testimony she did sign indicating rejection of coverages not accepted. Although the general law is that a court will look to the form of the application to determine if it complies with the statute, this court, in *Bob Lairsey Ins. Agency v. Allen*, 180 Ga. App. 11 (2) (348 SE2d 658), held that in construing an insurance application under OCGA § 33-34-5 (b) as amended, testimony was admissible which related to whether the person signed the application. Hence, we find there is sufficient information that Ms. Goddard signed the line indicating rejection of coverages not accepted on the opposite page. Does this signature control the result we are required to reach? We find that it does not.

We have two principles of law in conflict: (1) the insured was required to read the application and is bound by her signature (see generally *Stewart v. Boykin*, 165 Ga. App. 868, 869 (303 SE2d 50); *Hubert v. Beale Roofing*, 158 Ga. App. 145, 146 (279 SE2d 336); *Mutual of Omaha Ins. Co. v. Truluck*, 129 Ga. App. 692, 693 (200 SE2d 913); (2) the application is required to comply with OCGA § 33-34-5 (b) which requires the insurer to offer $50,000 PIP, which may be reduced to $5,000 by the insured, and in the absence of such reduction or rejection, in writing, the insured will have $50,000 PIP coverage

from the inception of the policy. *Perry v. Intl. Indem. Co.*, 251 Ga. 709, 710 (309 SE2d 139). Of course, " 'an applicant's waiver of his privilege to obtain optional coverages [must] be made knowingly and in writing.' " (Emphasis deleted.) *Colwell v. Voyager Cas. Ins. Co.*, 251 Ga. 744, 748 (309 SE2d 617). We hold that the statute controls and we will turn to the application alone to determine whether the reduction in the instant case was "made knowingly and in writing" in accordance with the statutory scheme.

" 'In order for a document to be in substantial compliance with OCGA § 33-34-5 (b) . . . the form on its face should show the prospective insured, as a reasonable man or woman, the offered coverages and the action needed to accept or reject with such clarity so as not to require speculation as to whether there was a knowing election. In other words, does the form show that the applicant, as an ordinary reasonable man or woman, understood what was being offered and what choices he or she was making?' " *Johnson v. Southeastern Fidelity Ins. Co.*, 178 Ga. App. 431, 435 (343 SE2d 709). Although *Johnson* involved a pre-November 1, 1982 policy, its reasoning is apropos to the issue we face here. Applying the above standards to the facts of the instant case, we find the form not in substantial compliance with the statute for the optional coverages were not explained, but were abbreviated and not clearly understandable to the uninformed (see *Tolison*, supra at 100), there was no "boldface type" indicating optional coverages and explanation of those coverages (OCGA § 33-34-5 (b)), and we find that " 'the offered coverages and the action needed to accept or reject [were not explained] with such clarity so as not to require speculation as to whether there was a knowing election.' " *Walden v. Progressive Cas. Ins. Co.*, 184 Ga. App. 774 (362 SE2d 505). There being no reduction or rejection of optional coverage in compliance with the statute, the policy provides $50,000 PIP coverage from its inception. *Perry*, supra.

We have examined each of appellant's enumerated errors and find them to be without merit.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JANUARY 4, 1989 —
REHEARING DENIED JANUARY 31, 1989 — 

*Jenkins, Bergman & Darroch, Robert M. Darroch, Robert E. Mulholland, C. David Vaughn*, for appellant.

*Didio & Broome, Stefano A. Didio, Robert W. Broome*, for appellees.